UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
------------------------------------x
JONATHAN P. WHARTON,

                Plaintiff,

      -against-                <u>MEMORANDUM & ORDER</u>
                                10-CV-0265(JS)(AKT)
COUNTY OF NASSAU; NASSAU COUNTY
SHERIFF'S DEPARTMENT; ELIZABETH
LOCONSOLO, in her official and
individual capacity; CAPTAIN
ANTHONY ZUARO, in his official and
individual capacity; GERARD
HUMPHREYS, in his official and
individual capacity; and MARY
ELIZABETH OSTERMANN, in her
official and individual capacity,

                Defendants.
------------------------------------x
APPEARANCES
For Plaintiff:      Frederick K. Brewington, Esq.
                  Valerie M. Cartright, Esq.
                  Law Offices of Frederick K. Brewington
                  556 Peninsula Boulevard
                  Hempstead, NY 11550

For Defendants:     Barbara E. Van Riper, Esq.
                  Office of the Nassau County Attorney
                  One West Street
                  Mineola, NY 11501

                  Deanna Darlene Panico, Esq.
                  Michael Paul Siravo, Esq.
                  Bee Ready Fishbein Hatter & Donovan, LLP
                  170 Old Country Road, Suite 200
                  Mineola, NY 11501

SEYBERT, District Judge:

        Currently pending before the Court is Defendants

County of Nassau (the "County"), the Nassau County Sheriff's

Department (the "Department"), Elizabeth Loconsolo

("Loconsolo"), Captain Peter Dudek ("Dudek"), Captain Anthony Zuaro ("Zuaro"), Gerard Humphreys ("Humphreys"), and Mary Elizabeth Ostermann's ("Ostermann" and collectively, "Defendants") motion for summary judgment. For the following reasons, Defendants' motion is GRANTED IN PART and DENIED IN PART.

<u>BACKGROUND</u>[1]

Plaintiff Jonathan P. Wharton ("Plaintiff" or "Wharton") originally commenced this action <u>pro</u> <u>se</u> on January 15, 2010 and thereafter retained counsel to file an Amended Complaint. The Amended Complaint alleges, <u>inter</u> <u>alia</u>, that Defendants discriminated against him on the basis of his African-American race and his Protestant religion. Moreover, Plaintiff alleges that Defendants retaliated against him for opposing Defendants' allegedly discriminatory practices.

Similar to how the parties have summarized the factual background of this case, the Court will begin with some general background and then separate its discussion into different categories of events.

---

[1] Defendants initially moved for a pre-motion conference on June 18, 2012 (Docket Entry 63) and the Court held a conference on July 27, 2012 (<u>see</u> 7/27/12 Min. Entry, Docket Entry 66). As a result of the conference, Plaintiff agreed to withdraw certain claims and the parties thereafter submitted revised Local Civil Rule 56.1 Statements ("56.1 Stmt.") and Counterstatements ("56.1 Counterstmt."). The following material facts are drawn from those revised 56.1 Statements and Counterstatements and their evidence in support. Any relevant factual disputes are noted.

I.  <u>Plaintiff's Employment History</u>

Plaintiff was hired as a Corrections Officer for the Department in 1988.  (Defs.' 56.1 Stmt. ¶ 2.)  After training, he was assigned to the Department's Security Unit and then to Satellite Rehabilitation.  (Defs.' 56.1 Stmt. ¶ 4.)  Later, Plaintiff was reassigned again to Administration Public Information.  (Defs.' 56.1 Stmt. ¶ 4.)  His duties at Administration Public Information involved providing tours to people in the community and generally managing communications with the public.  (Defs.' 56.1 Stmt. ¶ 5.)

In February 2002, non-party Sheriff Edward Reilly reassigned Plaintiff from Administration Public Information to a Security Platoon within the correctional facility.  (Defs.' 56.1 Stmt. ¶ 7.)  According to Defendants, Sheriff Reilly had directed that some officers who were in non-mandated posts, such as Plaintiff's position in Administration Public Information, be placed into mandated posts in order to reduce overtime costs. (Defs.' 56.1 Stmt. ¶¶ 6-7.)  Plaintiff, however, disputes that his post in Administration Public Information was a non-mandated post.  (Pl.'s 56.1 Stmt. ¶ 7.)  Furthermore, Defendants maintain that Plaintiff had requested placement into Security Platoon 2, which was a midnight shift and came with a night differential stipend.  (Defs.' 56.1 Stmt. ¶ 8.)

II.  Plaintiff's Religious Involvement

According to Plaintiff, in 2000, Sheriff Reilly sent Plaintiff to be trained and certified as a Senior Chaplain. (Pl.'s 56.1 Counterstmt. ¶ 1.)  With Defendants' approval, Plaintiff had been ministering to, and providing religious services for, inmates since 1990.  (Pl.'s 56.1 Counterstmt. ¶ 1.)

Defendants recount the events somewhat differently, and assert that in December 2003, Sheriff Reilly learned that Plaintiff was providing inmates with religious services and asked Defendant Loconsolo, General Counsel for the Department, to research whether this was appropriate.  (Defs.' 56.1 Stmt. ¶ 11.)  Loconsolo conducted an investigation and determined that this created a conflict between Plaintiff's duties as a corrections officer and his position as a religious advisor to inmates.  (Defs.' 56.1 Stmt. ¶ 12.)  As such, Sheriff Reilly directed Loconsolo to draft a letter advising Plaintiff to cease providing inmates with religious services.  (Defs.' 56.1 Stmt. ¶ 14.)

Although it is somewhat unclear, the record seems to reflect that Plaintiff indeed ceased ministering to inmates, but continued to engage in some religious activities.  For example, on May 11, 2009, Plaintiff attended services in the inmate chapel while off-duty.  (Defs.' 56.1 Stmt. ¶ 21.)  This violated

4

the Department's Policies and Procedures regarding visiting facilities off-duty without permission and wearing a Corrections Officer uniform for unofficial business. (Defs.' 56.1 Stmt. ¶¶ 19-20.)

On June 16, 2009, Defendant Zuaro sent Plaintiff an email requesting information regarding Plaintiff's attendance at inmate religious services on May 11, 2009 and any other off-duty attendance at the Correctional Facilities' religious services. (Defs.' 56.1 Stmt. ¶ 24.) Plaintiff responded three days later and admitted to attending religious services at the Correctional Facility while off-duty. (Defs.' 56.1 Stmt. ¶ 25.)

On July 20, 2009, the Department issued a Notice of Personnel Action ("NOPA") against Plaintiff for entering the Correctional Facility while off-duty without permission and for wearing his uniform while engaged in unofficial conduct. (Defs.' 56.1 Stmt. ¶ 26.) Defendants characterize the NOPA as a "Counseling Notice" and maintain that Plaintiff was not disciplined nor was any adverse action taken. (Defs.' 56.1 Stmt. ¶¶ 27-29.) Plaintiff contends that a NOPA is disciplinary in nature, it is the first step in a progressive discipline policy, and that it subjects him to a higher penalty of discipline for future violations. (Pl.'s 56.1 Counterstmt. ¶¶ 68-69.)

Thereafter, on August 7, 2009, Plaintiff requested access to the chapels in Building A and the 832 Building. (Defs.' 56.1 Stmt. ¶ 16.)   The Department denied Plaintiff's request because the chapels were for inmate use only.  (Defs.' 56.1 Stmt. ¶ 16.)  Twice more, on February 26, 2010 and March 7, 2010, Plaintiff requested access to the inmate chapels on behalf of himself and other corrections officers.[2]  (Defs.' 56.1 Stmt. ¶¶ 17-18.)   The Department denied his requests on both occasions.  (Defs.' 56.1 Stmt. ¶¶ 17-18.)

In addition to his requests for access to the inmate chapels, Plaintiff also made a number of requests for time off or for reassignments for religious observances.[3]  For example, on April 1, 2010, Plaintiff submitted an inter-departmental memo to Dudek requesting an "emergency reassignment" for April 3, 2010 and April 4, 2010 in order to allow Plaintiff to "attend to certain religious practices."   (Defs.' 56.1 Stmt. ¶ 40.) Likewise, on June 9, 2010, Plaintiff sent a memorandum to Zuaro, Dudek, and Loconsolo requesting a reassignment for religious reasons.  (Defs.' 56.1 Stmt. ¶ 42.)  Defendant Dudek denied

---

[2] On February 26, 2010, Plaintiff requested access to the inmate chapels on behalf of all corrections officers on the midnight shift.  (Defs.' 56.1 Stmt. ¶ 17.)  On March 7, 2010, Plaintiff sent Defendant Dudek an inter-departmental memorandum requesting access to the chapels and providing the signatures of fifteen other employees.  (Defs.' 56.1 Stmt. ¶ 18.)

[3] The Court will generally refer to these as Plaintiff's "time-off requests."

these requests because reassignment was not the proper procedure for seeking time off.  (Defs.' 56.1 Stmt. ¶¶ 41, 43.)

Similarly, on October 27, 2010, Plaintiff requested a reassignment or "self-swap" for October 31, 2010.  (Defs.' 56.1 Stmt. ¶ 44.)  A "self-swap" is a procedure allowing an officer to take time off and owe it back to the Department.  (Defs.' 56.1 Stmt. ¶ 44.)  The Department denied Plaintiff's request due to several procedural defects, including its contention that the Department did not permit self-swaps.  (Defs.' 56.1 Stmt. ¶ 45.)

Finally, on March 28, 2011, Plaintiff again requested reassignments, which were denied because, according to Defendants, Plaintiff did not follow proper procedures and because Plaintiff's work schedule did not prohibit him from attending religious ceremonies during the day.  (Defs.' 56.1 Stmt. ¶¶ 46-47.)

III. <u>Plaintiff's Role in the Employee Assistance Program</u>

In 1993, Plaintiff attended training for the Employee Assistance Program ("EAP") and became a volunteer to assist the Department's employees with personal problems such as issues with alcohol or troubles at home.  (Defs.' 56.1 Stmt. ¶¶ 48-49.)  In 1995, the Department established an EAP Unit.  (Defs.' 56.1 Stmt. ¶ 55.)  As such, Corporal Eric Bauman and civilian John Connelly became the first full-time employees of the EAP Unit.  (Defs.' 56.1 Stmt. ¶ 58.)  Later, Corporal Gary Pfleger and

civilian Sandy Long-Belfon, who is African-American, were assigned as full-time EAP Coordinators. (Defs.' 56.1 Stmt. ¶ 58.)

On September 20, 2006, a Sheriff's bulletin was issued listing the employees in particular units. (Defs.' 56.1 Stmt. ¶ 59.) Plaintiff's name was not on the EAP list. (Defs.' 56.1 Stmt. ¶ 59.)

Later, in January 2010, Corporal Pfleger informed Dudek that he may be leaving the EAP Unit, and as a result, the Department posted an opening for a position in the Unit. (Defs.' 56.1 Stmt. ¶¶ 61-62.) According to Defendants, Plaintiff and about nineteen others applied for the position. (Defs.' 56.1 Stmt. ¶ 63.) Corporal Pfleger, however, ultimately decided not to leave the EAP Unit, and the Department did not conduct any interviews. (Defs.' 56.1 Stmt. ¶ 64.) According to Plaintiff, the posting was cancelled after Plaintiff was the only officer to apply. (Pl.'s 56.1 Counterstmt. ¶ 41.)

On October 27, 2010, Plaintiff sent Defendant Humphreys an inter-departmental memo asking whether Plaintiff was an active and recognized EAP Coordinator. (Defs.' 56.1 Stmt. ¶ 65.) Humphreys responded in the negative. (Defs.' 56.1 Stmt. ¶ 66.) The following year, in April 2011, the Department circulated a memorandum inviting its corporals and corrections

officers to apply for the EAP, but Plaintiff did not do so. (Defs.' 56.1 Stmt. ¶ 67.)

IV.  <u>Plaintiff's Equal Employment Opportunity Complaints</u>

Plaintiff filed several complaints regarding the above incidents.  More specifically, the County has an Equal Employment Opportunity Department ("County EEO") "that implements and administers equal employment opportunity policies and laws relating to the employment of all individuals with the Defendant County and the Defendant Department." (Defs.' 56.1 Stmt. ¶ 68.)  Defendant Ostermann has served as Director of the County EEO since 2005.  (Defs.' 56.1 Stmt. ¶ 69.)

On April 8, 2009, Plaintiff made a complaint to the County EEO by speaking to the Affirmative Action Specialist, Joseph Volker.  (Defs.' 56.1 Stmt. ¶ 75.)  Plaintiff alleged that he had been discriminated and retaliated against over the last ten years.  (Defs.' 56.1 Stmt. ¶ 75(a).)  According to Plaintiff, Volker was eventually terminated, in part for mishandling complaints, including those of Plaintiff.  (Pl.'s 56.1 Counterstmt. ¶¶ 16-17, 26.)  Despite mishandling, however, Defendants did not conduct any new action, new processing, or new investigations of Plaintiff's complaints.  (Pl.'s 56.1 Counterstmt. ¶ 27.)

On August 7, 2009, Plaintiff filed another complaint with the County EEO alleging that Defendants had discriminated

against him because they denied him access to inmate chapels, issued the July 2009 NOPA, and prohibited him from ministering to inmates. (Defs.' 56.1 Stmt. ¶ 76.) On August 21, 2009, the County EEO denied both of Plaintiff's complaints. With respect to the April 8, 2009 complaint, the County EEO determined that it was not appropriate for review because Plaintiff did not allege any disparaging statements or any adverse employment actions against him. (Defs.' 56.1 Stmt. ¶ 75(b).) With respect to the August 7, 2009 complaint, the County EEO determined that the Department had offered legitimate business reasons for its actions. (Defs.' 56.1 Stmt. ¶ 76(a).)

On August 28, 2009, Plaintiff filed a complaint with the United States Equal Employment Opportunity Commission ("EEOC"). (Defs.' 56.1 Stmt. ¶ 77.) According to Defendants, the EEOC complaint alleged that Defendants had discriminated and retaliated against Plaintiff in the following ways: (1) declining to place Plaintiff is a supervisory position; (2) transferring Plaintiff out of the Public Information Office; (3) issuing Plaintiff a NOPA for attending chapel services; (4) prohibiting Plaintiff from ministering to inmates; and (5) denying Plaintiff access to the inmate chapels. (Defs.' 56.1 Stmt. ¶ 77(a).) The EEOC dismissed Plaintiff's complaint on October 19, 2009. (Defs.' 56.1 Stmt. ¶ 77(b).)

Plaintiff then filed a charge with the New York State Division of Human Rights ("NYSDHR") in October 2009 alleging that he was discriminated against on the basis of his religion because Defendants ordered Plaintiff to stop ministering to inmates and because Defendants issued a NOPA to Plaintiff for attending inmate services.  (Defs.' 56.1 Stmt. ¶ 78.)   The NYSDHR dismissed Plaintiff's charge on June 28, 2011.  (Defs.' 56.1 Stmt. ¶ 78(b).)

On April 23, 2010, Plaintiff filed a retaliation complaint with the County EEO alleging that Dudek retaliated against him by denying him a position as an EAP Coordinator.  (Defs.' 56.1 Stmt. ¶ 79.)   The County EEO dismissed the retaliation complaint, finding that Defendants had a legitimate business reason for not assigning Plaintiff as an EAP Coordinator.  (Defs.' 56.1 Stmt. ¶ 79(a).)

On July 14, 2010, Plaintiff filed another retaliation complaint with the County EEO alleging that Dudek retaliated against him by requiring Plaintiff return a pager that he had received as an EAP volunteer and by failing to make Plaintiff an EAP Coordinator.  (Defs.' 56.1 Stmt. ¶ 80.)   Again this was dismissed on the basis of a legitimate business reason.  (Defs.' 56.1 Stmt. ¶ 80(a).)

Finally, Plaintiff filed two additional charges with the NYSDHR relating to alleged retaliation when he was denied a

position as an EAP Coordinator and for discrimination and
retaliation on the basis of race and religion. (Defs.' 56.1
Stmt. ¶¶ 81-82.)  The NYSDHR dismissed both charges on the
grounds of administrative convenience since Plaintiff intended
to pursue his claims in federal court. (Defs.' 56.1 Stmt.
¶¶ 81-82.)

DISCUSSION

Defendants now seek summary judgment on all of
Plaintiffs' claims.  The Court will first address the legal
standard of review on a motion for summary judgment before
turning to Defendants' motion.

Preliminarily, however, the Court notes that, after
receiving Defendants' moving papers, Plaintiff has agreed to
withdraw his negligence claim. (See Pl.'s Opp. Br., Docket
Entry 76, at 1.)  Accordingly, Defendants' motion for summary
judgment is GRANTED in this regard and Plaintiff's negligence
claim is DISMISSED.

I.  Legal Standard

Summary judgment is only appropriate where the moving
party can demonstrate that there is "no genuine dispute as to
any material fact" and that the moving party is entitled to
judgment as a matter of law. FED. R. CIV. P. 56(a).  In
considering this question, the Court considers "the pleadings,
depositions, answers to interrogatories and admissions on file,

12

together with any other firsthand information including but not
limited to affidavits." Nnebe v. Daus, 644 F.3d 147, 156 (2d
Cir. 2011) (citation omitted); see also FED. R. CIV. P. 56(c).
"In assessing the record to determine whether there is a genuine
issue to be tried . . . the court is required to resolve all
ambiguities and draw all permissible factual inferences in favor
of the party against whom summary judgment is sought." McLee v.
Chrysler Corp., 109 F.3d 130, 134 (2d Cir. 1997).  The burden of
proving that there is no genuine issue of material fact rests
with the moving party.  Gallo v. Prudential Residential Servs.,
L.P., 22 F.3d 1219, 1223 (2d Cir. 1994) (citing Heyman v. Com. &
Indus. Ins. Co., 524 F.2d 1317, 1320 (2d Cir. 1975)).  Once that
burden is met, the non-moving party must "come forward with
specific facts," LaBounty v. Coughlin, 137 F.3d 68, 73 (2d Cir.
1998), to demonstrate that "the evidence is such that a
reasonable jury could return a verdict for the nonmoving party,"
Anderson v. Liberty Lobby, 477 U.S. 242, 248, 106 S. Ct. 2505,
2510, 91 L. Ed. 2d 202, 218 (1986).  "Mere conclusory
allegations or denials will not suffice." Williams v. Smith,
781 F.2d 319, 323 (2d Cir. 1986).  And "unsupported allegations
do not create a material issue of fact." Weinstock v. Columbia
Univ., 224 F.3d 33, 41 (2d Cir. 2000), superseded by statute on
other grounds as stated in Ochei v. Coler/Goldwater Mem'l Hosp.,
450 F. Supp. 2d 275, 282 (S.D.N.Y. 2006).

II.  <u>Title VII Claims</u>

Defendants assert that Plaintiff's Title VII claims fail as a matter of law.  More specifically, they argue that: (1) Plaintiff's Title VII claims are time-barred, (2) Plaintiff has failed to exhaust his administrative remedies, (3) Plaintiff has failed to establish a prima facie case of discrimination, (4) Plaintiff has failed to establish a prima facie case of retaliation, and (5) Defendants have legitimate, non-discriminatory reasons for their actions that Plaintiff cannot show are pretextual.  The Court will address each of these arguments in turn.

A.  <u>Timeliness</u>

Defendants maintain that at least some of Plaintiff's claims are time-barred pursuant to 42 U.S.C. § 2000e-5.  The Court agrees.

Under 42 U.S.C. § 2000e-5, if a party chooses to file a charge with the EEOC, he must do so within 300 days of the alleged discriminatory conduct.  <u>See</u> <u>Kaur v. N.Y.C. Health & Hosps. Corp.</u>, 688 F. Supp. 2d 317, 330 (S.D.N.Y. 2010).  Here, Plaintiff first filed a charge with the EEOC on August 28, 2009. (Siravo Decl., Docket Entry 72-1, Ex. LL.)  As part of that complaint, Plaintiff raised that he had been discriminated and/or retaliated against: when Defendants failed to hire Plaintiff in a "supervisory position," presumably referring to

14

Defendants' creation of the EAP Unit in 1995 and their failure to designate Plaintiff as an EAP Coordinator; when Defendants transferred Plaintiff out of Administration Public Information in February 2002; and when Defendants instructed Plaintiff to stop ministering to inmates in December 2003. (See Siravo Decl. Ex. LL.)

Plaintiff, somewhat confusingly, argues that those incidents are "background evidence" but then states that they are "reasonably related to the scope of the EEOC investigation." (Pl.'s Opp. Br., Docket Entry 76, at 2.) While there is a "reasonably related" exception where a plaintiff has failed to exhaust his administrative remedies, see Deravin v. Kerik, 335 F.3d 195, 201 (2d Cir. 2003), this exception does not clearly address timeliness.

In any event, Plaintiff acknowledges that the aforementioned incidents are background information and his later assertions make clear that he does not intend to raise these incidents as adverse employment actions. (See Pl.'s Opp. Br. at 5 (stating that Defendants have attempted to mislead the Court by "focusing on conduct not in issue here and identifying it as 'unspecified' adverse actions.").)

Accordingly, to the extent that Plaintiff seeks to raise these events as a foundation for his discrimination or

retaliation claims, Defendants' motion for summary judgment is GRANTED.

> B. Exhaustion of Administrative Remedies

        Defendants also assert that Plaintiff's claims that he was discriminated and/or retaliated against when Defendants denied several of his time-off requests are not exhausted because Plaintiff failed to raise them in his EEOC complaint. (Defs.' S.J. Br., Docket Entry 72-4, at 3.)   The Court disagrees.

        Title VII requires that a plaintiff exhaust his administrative remedies before filing a civil action.   Butts v. N.Y.C. Dep't of Hous. Preservation & Dev., 990 F.2d 1397, 1401-02 (2d Cir. 1993), superseded by statute on other grounds, Civil Rights Act of 1991, Pub. L. No. 102-166, 105 Stat. 1071.   As a result, it is well-settled that a district court may only "hear Title VII claims that either are included in an EEOC charge or are based on conduct . . . which is 'reasonably related' to that alleged in the EEOC charge."   Butts, 990 F.2d at 1401.   The Second Circuit has recognized three situations where claims "reasonably relate" to conduct included in an EEOC charge: (1) where the claims in the civil action "would fall within the scope of the EEOC investigation which can reasonably be expected to grow out of the charge of the discrimination," Butts, 990 F.2d at 1402 (internal quotation marks and citation omitted);

16

(2) where the civil claim alleges "retaliation by an employer against an employee for filing an EEOC charge," id. at 1402-03; and (3) where the claims "allege[] further incidents of discrimination carried out in precisely the same manner alleged in the EEOC charge," id..

For the reasons discussed below, the Court finds that, even if Plaintiff's claims of discrimination based on denial of his time-off requests were "reasonably related" to the matter raised in his EEOC Charge, they are not adverse actions and therefore cannot support a claim for Title VII discrimination. However, Defendants' denial of Plaintiff's time-off requests do constitute adverse employment actions for purposes of his retaliation claim. As the aforementioned categories of "reasonably related" conduct makes clear, courts consider alleged retaliatory conduct for filing an EEOC charge to be "reasonably related." Here, Plaintiff's EEOC Charge raised allegations of racial and religious discrimination (Siravo Decl. Ex. LL), and any EEOC investigation that would have been expected to grow out of Plaintiff's EEOC Charge, therefore, would encompass Plaintiff's retaliation allegations. See Stuevecke v. N.Y. Hosp. Med. Ctr. of Queens, No. 01-CV-0326, 2003 WL 22019073, at *4 (E.D.N.Y. Aug. 26, 2003) (information in narrative statement of plaintiff's EEOC charge--which only had the "discrimination" box checked--was relevant in determining

that retaliation lawsuit was reasonably related to the EEOC charge).

Accordingly, Defendants' motion for summary judgment for Plaintiff's failure to exhaust his administrative remedies as it pertains to Plaintiff's allegations regarding his time-off requests is DENIED.

C.  Discrimination Claim

Discrimination claims brought under Title VII are analyzed under the burden-shifting framework that the Supreme Court established in McDonnell Douglas Corp. v. Green, 411 U.S. 792, 93 S. Ct. 1817, 36 L. Ed. 2d 668 (1973).  See Ruiz v. Cnty. of Rockland, 609 F.3d 486, 491 (2d Cir. 2010); Holcomb v. Iona Coll., 521 F.3d 130, 138 (2d Cir. 2008).  That framework requires a plaintiff to first establish a prima facie case of discrimination, after which the burden shifts to the defendant to articulate a legitimate, nondiscriminatory reason for the adverse employment action.  Holcomb, 521 F.3d at 138.  Once the defendant provides such a reason, "the burden shifts back to the plaintiff to demonstrate by competent evidence that the legitimate reasons offered by the defendant were not its true reasons, but were a pretext for discrimination."  Leibowitz v. Cornell Univ., 584 F.3d 487, 499 (2d Cir. 2009) (internal quotation marks and citations omitted), superseded on other grounds by N.Y.C. Local L. No. 85.

18

Defendants first argue that Plaintiff has failed to establish a prima facie case of discrimination.  To establish a prima facie case of discrimination, Plaintiff must show that: "1) he belonged to a protected class; 2) he was qualified for the position; 3) he suffered an adverse employment action; and 4) the adverse employment action occurred under circumstances giving rise to an inference of discriminatory intent."  Terry v. Ashcroft, 336 F.3d 128, 138 (2d Cir. 2003).  Defendants do not dispute that Plaintiff has satisfied the first and second elements; therefore, the Court will limit its discussion to the third and fourth elements.

### 1.  Adverse Employment Action

Although the Amended Complaint does not allege a formal "list" of adverse employment actions, the Court reads it to assert the following adverse actions: (1) issuing the July 20, 2009 NOPA; (2) denying of "promotions"--namely with respect to cancelling the EAP job posting in 2010; (3) "stripp[ing] Plaintiff of his job responsibilities--i.e., removing Plaintiff's responsibilities as an EAP volunteer and taking back his beeper; (4) denying Plaintiff's reassignment/time-off requests; and (5) denying Plaintiff's requests to utilize the inmate chapels.

Defendants assert that these actions are not adverse employment actions, and therefore Plaintiff's Title VII

discrimination fails. "An employee suffers an adverse
employment action if a 'materially adverse change' in the terms
and conditions of his employment takes place." Smalls v.
Allstate Ins. Co., 396 F. Supp. 2d 364, 370 (S.D.N.Y. 2005)
(quoting Galabya v. N.Y.C. Bd. of Educ., 202 F.3d 636, 640 (2d
Cir. 2000)). There is no definitive rule as to what types of
actions constitute an adverse employment action, see Connor v.
N.Y. State Dep't of Corr. Servs., No. 01-CV-0642, 2007 WL
764508, at *4 (E.D.N.Y. Mar. 9, 2007), but an action "must be
more disruptive than a mere inconvenience or an alteration of
job responsibilities," Galabya, 202 F.3d at 640.

          The Court turns first to the July 20, 2009 NOPA issued
to Plaintiff. Defendants characterize the NOPA as merely a
"Counseling Notice" and maintain that Plaintiff was not fined,
suspended, or reprimanded as a result. (Defs.' Br. for S.J. at
6.) Indeed, the NOPA contains a section entitled "Department
Action," and though it includes activities such as termination,
a fine, or a demotion, only the box for "Counseling Notice" is
checked off. (Siravo Decl. Ex. M.) Furthermore, "oral and
written warnings do not amount to materially adverse conduct,"
Chang v. Safe Horizons, 254 F. App'x 838, 839 (2d Cir. 2007),
and "[t]he application of the [employer's] disciplinary policies
to [the employee], without more, does not constitute adverse

employment action," id. (quoting Joseph v. Leavitt, 465 F.3d 87,
91 (2d Cir. 2006) (alterations in original)).

        Plaintiff, however, maintains that the NOPA
"constitutes one of the first steps in the disciplinary process
and subjects the Plaintiff to a higher penalty of discipline for
future violations." (Pl.'s Opp. Br. at 8; see Zuaro Dep. at 80
("Q: The counseling notice, would that be considered one of the
first steps that are taken in this progressive discipline
policy?  A: It could be.").)  The Court agrees with Plaintiff
that there is a question of fact as to whether the NOPA in this
case constituted an adverse employment action.  First, "NOPAs
. . . can negatively affect professional growth and form the
basis of further discipline . . . ."  Humphrey v. Cnty. of
Nassau, No. 06-CV-3682, 2009 WL 875534, at *5 (E.D.N.Y. Mar. 30,
2009).  Second, as Judge Joseph F. Bianco found in Humphrey,
"there are disputed issues of material fact regarding the
reasonableness of the defendants' issuances of the NOPAs at
issue."  Id. at *5 n. 5.  Here, Defendant Zuaro issued the NOPA
on July 20, 2009, but the NOPA itself discusses events months
prior, including events in September 2008.  Furthermore, Zuaro
testified regarding a somewhat limited "investigation," some of
which he did not recall, and at times characterized the NOPA as
disciplinary in nature.  (Zuaro Dep. at 58-59 (discussing the
investigation as including emailing Plaintiff and potentially

talking to another individual, but not recalling any investigation regarding some of the events in September 2008); id. at 61 ("Jonathan was reprimanded or disciplined for these issues.").) Accordingly, there is a sufficient question of fact to overcome summary judgment on this issue; whether Plaintiff will ultimately be able to establish such at trial is another matter. See Tepperwien v. Entergy Nuclear Operations, Inc., No. 07-CV-0433, 2010 WL 8938797, at *4-5 (S.D.N.Y. Mar. 16, 2010) (noting that, although there was a genuine issue of material fact as to whether a counseling memorandum was "materially adverse" at the summary judgment stage, evidence at trial established that the counseling had been completely expunged from the plaintiff's personnel record and there was nothing to suggest, other than plaintiff's subjective belief, that the counseling had been a disciplinary measure).

In contrast, however, Defendants' denial of Plaintiff's requests for time off and for use of the inmate chapels do not constitute adverse employment actions for purposes of Plaintiff's Title VII discrimination claims. Denials of vacation time are not adverse actions. See Kaur, 688 F. Supp. 2d at 332 ("[D]enial of vacation time and alteration of Plaintiff's lunch schedule, taken alone, do not rise to the level of an adverse employment action."); O'Neill v. City of Bridgeport Police Dep't, 719 F. Supp. 2d 219, 226 (D. Conn.

2010) (forcing plaintiff to take a vacation day for Sabbath was not an adverse action); Figueroa v. N.Y. Health & Hosps. Corp., 500 F. Supp. 2d 224, 229-30 (S.D.N.Y. 2007) (denial of plaintiff's first choice of vacation time was not an adverse employment action).  Nor are Defendants' refusals to allow Plaintiff to use the inmate chapels a materially adverse change in his employment because, primarily, his requests pertained to usage of the space during his lunch break for purposes such as meditation and bible study.  (See, e.g., Siravo Decl. Exs. G, H.)  Plaintiff's argument that, because he had previously ministered to inmates, any denial of access to the inmate chapels is a material change in his job privileges and duties is unavailing.  Plaintiff is, unsuccessfully, attempting to conflate the time-barred allegations regarding Defendants' instructions to stop ministering with his timely claims.

Finally, the Court considers whether Defendants' refusal to "promote" Plaintiff to a full-time position in the EAP Unit and divesting him of his responsibilities as an EAP volunteer are adverse employment actions.  While courts have considered a failure to promote as an adverse action, see, e.g., Humphrey, 2009 WL 875534, at *5 ("As an initial matter, a failure to promote certainly qualifies under the law as an 'adverse employment action'" (quoting Demoret v. Zegarelli, 451 F.3d 140, 151 (2d Cir. 2006)), Plaintiff's characterization in

this instance as a failure to promote is not accurate. The
record clearly reflects that Plaintiff would not have been paid
any more in the EAP Unit than in Security Platoon 2, and in fact
would have been paid less due to loss of his night differential
stipend.[4] (Pl.'s Dep. at 103.) Moreover, there is nothing to
suggest that the EAP Unit was inherently more prestigious than
any other position beside Plaintiff's subjective belief in such.
Denial of volunteer opportunities simply does not rise to the
level of adverse employment actions. See Chamberlin v.
Principi, 247 F. App'x 251, 254-55 (2d Cir. 2007) (prevention of
plaintiff from volunteering as a replacement group leader, where
he had volunteered prior to EEOC complaint, did not satisfy
somewhat less stringent standard for retaliatory acts). Nor are
refusals to transfer an employee into a lateral position
constitute an adverse employment action. Cf. Smalls, 396 F.
Supp. 2d at 371 ("It is well-settled that a lateral transfer
does not rise to the level of an adverse employment action as a
matter of law.").

        Accordingly, Defendants' motion for summary judgment
on Plaintiff's Title VII discrimination claims for failure to

---

[4] Plaintiff also maintains that EAP volunteers and full-time
employees in the EAP Unit received pagers, accompanied with
additional pay associated with those pagers. (Pl.'s Br. at 7.)
Any such additional pay, however, was minimal. (See Pl.'s Dep.
at 43 (in response to being asked the amount of "beeper pay" or
"pager pay," Plaintiff responded that he received "$80 biweekly
for being on call").)

establish any adverse employment action is DENIED.  However, the only adverse employment action that survives as a basis for Plaintiff's Title VII discrimination claims is the July 2009 NOPA.

    2.  Inference of Discrimination

    Defendants further maintain that, even if Plaintiff has established some adverse employment action, he cannot sufficiently establish that such adverse actions took place under circumstances giving rise to an inference of discrimination.  The Court agrees with respect to Plaintiff's claims of racial discrimination but disagrees as to Plaintiff's claims of religious discrimination.

    An inference of discrimination may be derived from a variety of circumstances such as "the employer's criticism of the plaintiff's performance in ethnically degrading terms," or the employer's "invidious comments about others in the employee's protected group," or "the more favorable treatment of employees not in the protected group."  Chambers v. TRM Copy Ctrs. Corp., 43 F.3d 29, 37 (2d Cir. 1994).

    Despite the amount of evidence in this case, Plaintiff's evidence regarding any alleged racial discrimination is scant.  For example, Plaintiff argues that "no African Americans were picked as full-time EAP coordinators" even though Plaintiff was well-qualified for the position and "Defendants'

instruction to stop ministering to inmates, despite [Plaintiff's] prior paid training to do so by the Sheriff's Department, gave rise to an inference of discrimination." (Pl.'s Opp. Br. at 11.) The Court fails to see how the latter is potentially racially motivated at all. With respect to Plaintiff's assertions that Caucasian employees were given full-time positions in the EAP Unit, Plaintiff also readily acknowledges that Captain Bauman, the first individual given a full-time EAP position, was higher-ranking and also highly-qualified for the position. (Pl.'s Dep. at 56-63.) Thereafter, at least one African-American was appointed to the EAP Unit. Accordingly, Defendants' motion for summary judgment on Plaintiff's Title VII claim of racial discrimination is GRANTED.

This does not end the inquiry, however, with respect to Plaintiff's Title VII claim of religious discrimination. Here, Plaintiff alleges that there is an inference of religious discrimination due to the sequence of events. See Sassaman v. Gamache, 566 F.3d 307, 312 (2d Cir. 2009) (noting that the sequence of events may establish an inference of discrimination); Chambers, 43 F.3d at 37 (same). The Court agrees.

Defendants are correct in their assertion that Plaintiff has not come forward with any evidence indicating that employees who were members of other religious groups were

allowed to minister to inmates. (Defs.' S.J. Br. at 9-10.)
However, it is not clear that anyone else sought to minister to
inmates. More relevant here are Plaintiff's allegations that
Defendants authorized Plaintiff to minister to inmates and even
paid for his religious training and certification (Am. Compl.
¶¶ 44-45, 57), yet later directed him to stop ministering and
issued a NOPA to him for, inter alia, attending religious
services at the inmate chapel. Accordingly, the Court finds
that Plaintiff has sufficiently established a prima facie case
of religious discrimination to overcome Defendants' motion for
summary judgment, and Defendants' motion in this regard is
DENIED.

     D. <u>Prima Facie Case of Retaliation</u>

       Defendants further argue that Plaintiff has not
established a prima facie case of retaliation. To meet his
initial burden of establishing a prima facie case of
retaliation, Plaintiff must show that: "(1) [he] was engaged in
protected activity; (2) [Defendants] w[ere] aware of that
activity; (3) [Plaintiff] suffered an adverse employment action;
and (4) there was a causal connection between the protected
activity and the adverse employment action." <u>Reed v. A.W.</u>
<u>Lawrence & Co.</u>, 95 F.3d 1170, 1178 (2d Cir. 1996) (citation
omitted). Again, Defendants do not dispute that Plaintiff
engaged in protected activity by filing complaints with the

27

County EEO, EEOC, and NYSDHR and that the County and Department were aware of those protected activities.  (Defs.' S.J. Br. at 10.)  However, they do dispute the third and fourth prongs of the aforementioned standard.

    1.  Adverse Employment Action

    Defendants assert that, for the same reasons as articulated in the discrimination context, Plaintiff has not established any adverse employment action.  The Court disagrees.

    The analysis with respect to adverse employment actions for retaliation claims differs somewhat from the analysis for discrimination claims.  More specifically, "[t]he Supreme Court has . . . broadened the scope of the kinds of actions that could be considered retaliatory acts by an employer."  Chamberlin, 247 F. App'x at 254 (citing Burlington Northern & Santa Fe Ry. v. White, 548 U.S. 53, 126 S. Ct. 2405, 165 L. Ed. 2d 345 (2006)).  "The standard announced by the Supreme Court in White requires that a plaintiff 'show that a reasonable employee would have found the challenged action materially adverse, which in this context means it might well have dissuaded a reasonable worker from making or supporting a charge of discrimination.'"  Id. (quoting White, 548 U.S. at 68).

    Thus, under this "broadened" standard, the NOPA is an adverse employment action for the reasons articulated above.

Similarly, this standard does not change the Court's decision regarding denial of inmate chapels or any alleged adverse actions with respect to the EAP Unit. See Cristofaro v. Lake Shore Cent. Sch. Dist., 473 F. App'x 28, 31 (2d Cir. 2012) ("No reasonable employee would have been deterred from making or supporting a charge of discrimination based on Redman's refusal to give the employee an unpaid and effectively volunteer position as co-advisor to a student dance team."); Chamberlin, 247 F. App'x at 255 ("[N]otably, in spite of the incident in question, Chamberlin continued to fulfill his previously assigned group therapy leadership responsibilities and established and led new therapy groups. In other words, we do not believe that Chamberlin's exclusion from volunteering to take on an unassigned duty would have dissuaded a reasonable worker from bringing a discrimination charge."). This analysis is objective and Plaintiff's subjective thoughts regarding Defendants' actions with respect to the EAP Unit do not weigh into the Court's analysis. See White, 548 U.S. at 68-70. Accordingly, Defendants' activities with respect to EAP are not adverse employment actions for Plaintiff's Title VII retaliation claim.

However, the Court does find that Defendants' denial of Plaintiff's requests for reassignments, self-swaps, and time off are adverse actions as they would dissuade a reasonable

employee from making or supporting a charge of discrimination. See O'Neill, 719 F. Supp. 2d at 229 (denying plaintiff's requests for reassignment, although not adverse actions for discrimination claims, did support prima facie retaliation case).

Accordingly, Defendants' motion for summary judgment on Plaintiff's Title VII retaliation claims for failure to establish an adverse employment action is DENIED. The July 2009 NOPA and Defendants' denial of Plaintiff's time-off requests constitute adverse employment actions that survive Defendants' motion for summary judgment on Plaintiff's Title VII retaliation claim.

2. Causal Connection

Defendants further contend that Plaintiff cannot establish a prima facie case of retaliation because he cannot demonstrate a causal connection between the protected activity and the allegedly adverse employment actions. The Court disagrees.

"[A] causal connection can be established indirectly by showing that the protected activity was closely followed in time by the adverse employment action." Bucalo v. Shelter Island Union Free Sch. Dist., 691 F.3d 119, 131 (2d Cir. 2012) (internal quotation marks and citation omitted). Here, Plaintiff filed a complaint with the County EEO on April 8, 2009

(Siravo Decl. Ex. II) and Defendants issued a NOPA three months later.  See Gorzynski v. JetBlue Airways Corp., 596 F.3d 93, 110 (2d Cir. 2010) (noting that the Circuit has "previously held that five months is not too long to find [a] causal relationship").  Furthermore, denial of Plaintiff's time-off requests occurred throughout the period of time that Plaintiff filed various complaints with the County EEO, the EEOC, and NYSDHR.  Accordingly, Defendants' motion for summary judgment on Plaintiff's Title VII retaliation claim because Plaintiff cannot demonstrate a prima facie case of retaliation is DENIED.

   E.  Legitimate, Non-Discriminatory Reasons and Pretext

     Defendants next assert that they are entitled to summary judgment on Plaintiff's Title VII claims of discrimination and retaliation because they have come forward with legitimate, non-discriminatory reasons for their actions that Plaintiff cannot show are pretextual.  The Court disagrees.

     Specifically, Defendants assert that they had a legitimate, non-discriminatory reason for issuing the July 2009 NOPA to Plaintiff because Plaintiff's actions in wearing his uniform for unofficial business and in accessing the Correctional Center without permission from the Tour Commander violated the Department's Policies and Procedures.  (See Defs.' Policy Numbers CD 03-01-11 and CD 03-03-02, Exs. I & J to Siravo Decl.)  Plaintiff does not necessarily dispute that such

policies were in place and, while he maintains that he did have permission to access the inmate chapels, he also asserts that he had been attending religious services in the Correctional Facility in essentially the same manner for decades, at times with the explicit approval of Defendants' personnel, and that Defendants' suddenly began enforcing the policy.

As Defendants have come forward with a legitimate, non-discriminatory reason for issuing the NOPA, the burden shifts back to Plaintiff to establish that Defendants' proffered reason is pretextual.  See Kaytor v. Elec. Boat Corp., 609 F.3d 537, 553 (2d Cir. 2010).  The Court finds that Plaintiff has provided sufficient evidence that a reasonable jury could conclude that Defendants' proffered legitimate, non-discriminatory reasons were pretextual.  Plaintiff has shown that, at least for a period of time, he had been attending inmate services and attending religious services in the inmate chapels without incident.  (See, e.g., Cartright Decl., Docket Entry 76-1, Ex. S (August 27, 1997 letter recognizing Plaintiff as a minister and corrections officer), Ex. T (September 1, 2000 letter recognizing Plaintiff as Senior Chaplain), Exs. U & V (awards recognizing Plaintiff for his ministry achievements while serving with the County).)  Furthermore, Plaintiff claims that he had never been reprimanded for conduct similar to that "counseled" in the July 2009 NOPA (Pl.'s Opp. Br. at 13) and

that, despite the apparent sudden shift in policy or change of heart, Defendant Zuaro conducted a limited investigation without any recollection as to why such policies were being enforced. (See Zuaro Dep. at 99-102.) Accordingly, Defendants' motion for summary judgment for Plaintiff's failure to show pretext is DENIED.

Defendants also maintain that they had a legitimate, non-discriminatory reason for denying Plaintiff's time-off requests because Plaintiff had inappropriately requested "reassignments." Plaintiff, however, has submitted evidence that there was no real policy, one way or the other, on reassignments, and that self-swaps had been permitted in the past. (See Dudek Dep. at 270-77.) Evidence regarding Defendants' departure from procedure can demonstrate pretext. See Becker v. Buffalo Pub. Schs., No. 07-CV-0343, 2013 WL 904088, at *8 (W.D.N.Y. Feb. 15, 2013), adopted by 2013 WL 902412 (W.D.N.Y. Mar. 8, 2013); Renaud v. Fed. Express Corp., No. 10-CV-4261, 2012 WL 34089, at *8 (E.D.N.Y. Jan. 6, 2012). Accordingly, Defendants' motion for summary judgment in this regard is also DENIED.

III. Section 1981 and 1983 Claims

Defendants also move for summary judgment on Plaintiff's claims brought under 42 U.S.C. § 1981 ("Section 1981") and 42 U.S.C. § 1983 ("Section 1983"). According to

Defendants, Plaintiff has not established a municipal policy in order to maintain a Section 1981 or Section 1983 claim against the County and the Department, and Plaintiff has not demonstrated any personal involvement of the individual Defendants in order to maintain claims against them.[5]  Other than asserting such arguments, however, Defendants offer no further explanation for their assertions.[6]

A plaintiff seeking to assert claims against a municipality under Sections 1981 or 1983 must show that the claimed violation of his constitutional rights was the result of a municipal policy or custom under Monell v. Department of Social Services, 436 U.S. 658, 98 S. Ct. 2018, 56 L. Ed. 2d 611 (1978).  Carmody v. Vill. of Rockville Centre, 661 F. Supp. 2d 299, 330 (E.D.N.Y. 2009).  Although isolated incidents by non-policymaking employees are insufficient to hold a municipality liable, a plaintiff can prevail if he can establish that the alleged wrongdoing was pursuant to a policy or custom, was

---

[5] Defendants also assert that, because Section 1981 and 1983 claims are analyzed under the same burden-shifting analysis as Title VII claims, Plaintiff's Section 1981 and 1983 claims must fail for the same reasons articulated above.  Insofar as the Court has rejected Defendants' arguments regarding Plaintiff's Title VII claims, Plaintiff's Section 1981 and 1983 claims similarly survive.

[6] "[I]t is well-established that courts cannot make a party's arguments for it or fill in the blanks on that party's behalf." Bey v. New York, No. 11-CV-3296, 2013 WL 3282277, at *6 (E.D.N.Y. June 25, 2013) (internal quotation marks and citation omitted).

sufficiently widespread and persistent that it constituted a custom or policy of which supervising authorities must have been aware, or occurs under circumstances evidencing supervisory officials' deliberate inference to such wrongdoing. Jones v. Town of E. Haven, 691 F.3d 72, 80-81 (2d Cir. 2012).

Here, Plaintiff apparently asserts that policymakers participated directly in the unconstitutional activity and/or that policy-makers acquiesced in the unconstitutional behavior of their subordinates. See Okin v. Vill. of Cornwall-on-Hudson Police Dep't, 577 F.3d 415, 439-40 (2d Cir. 2009) (one way of showing custom or policy is by establishing that policymakers acquiesced in unconstitutional behavior); Carbajal v. Cnty. of Nassau, 271 F. Supp. 2d 415, 422 (E.D.N.Y. 2003) (noting that a plaintiff may prove municipal liability by showing that a policymaker directly committed or commanded the unconstitutional behavior). More specifically, Plaintiff argues that policymakers such as Dudek, Loconsolo, and Ostermann participated in particular unconstitutional acts against him. (Pl.'s Opp. Br. at 21.) Defendants raise no dispute as to whether these individuals are policymakers. Furthermore, Dudek, Loconsolo, and Ostermann, for example, were aware of, if not directly participated in, the issuance of the NOPA and the denials of Plaintiff's time-off requests. Accordingly, Defendants' motion for summary judgment on Plaintiff's Section

1981 and 1983 claims on the basis of Plaintiff's failure to establish municipal liability against the County and the Department is DENIED.

Similarly, and for some of the same reasons just mentioned, the Court rejects Defendants' argument that Plaintiff cannot establish liability against the individual Defendants in their individual capacities. "In order to make out a claim for individual liability under § 1981, 'a plaintiff must demonstrate some affirmative link to causally connect the actor with the discriminatory action . . . . [P]ersonal liability under section 1981 must be predicated on the actor's personal involvement.'" Mazyck v. Metro. Transp. Auth., 893 F. Supp. 2d 574, 596 (S.D.N.Y. 2012) (quoting Patterson v. Cnty. of Oneida, N.Y., 375 F.3d 206, 229 (2d Cir. 2004) (alteration in original)). Likewise, "a plaintiff must establish an individual defendant's personal involvement in the claimed violation to find him liable in his individual capacity under § 1983." Id. Here, Plaintiff has produced evidence that Defendant Zuaro issued the NOPA (see Siravo Decl. Ex. M); Defendant Dudek denied at least some of Plaintiff's time-off requests (see, e.g., Siravo Decl. Ex. U); Defendants Loconsolo and Humphreys had at least some knowledge of, and involvement in, denying Plaintiff's time-off requests (see Siravo Decl. Exs. Y (showing Loconsolo and Humphreys copied on Plaintiff's request), Ex. T (Plaintiff's June 9, 2010 time-

36

off request directed to Zuaro, Dudek, and Loconsolo), Ex. X (Humphreys' denial of Plaintiff's self-swap request of October 27, 2010)); and that Ostermann, as Director of the County EEO, played at least some role with respect to Plaintiff's County EEO complaints (Pl.'s Counterstmt. ¶¶ 10-27). Accordingly, Defendants' motion for summary judgment on Plaintiff's Section 1981 and 1983 claims against the individual Defendants is DENIED.[7]

IV.  Plaintiff's State Law Claims

Defendants also move for summary judgment on Plaintiff's state law claims because: (1) Plaintiff failed to serve a notice of claim; (2) Plaintiff's claims under New York Executive Law § 296 fail as a matter of law; and (3) Plaintiff's intentional infliction of emotional distress claim warrants dismissal. The Court will address each of these arguments in turn.

A.  Notice of Claim

Defendants assert that Plaintiff's state law claims fail because Plaintiff has failed to serve a notice of claim as

---

[7] Defendants also assert that Plaintiff's Section 1981 claim must fail because Plaintiff did not establish that Defendants' alleged discriminatory acts inhibited Plaintiff's ability to engage in protected activities under Section 1981. The Court disagrees. See Mazyck, 893 F. Supp. 2d at 594 ("Section 1981 'outlaws discrimination with respect to the enjoyment of benefits, privileges, terms, and conditions of a contractual relationship, such as employment.'" (quoting Patterson, 375 F.3d at 224).

required by New York's General Business Law ("GML") §§ 50-e and
50-i. (Defs.' S.J. Br. at 20.) Plaintiff does not dispute his
failure to file a notice of claim but asserts that such failure
is not fatal to his state law claims because Defendants were
effectively put on notice and had knowledge of Plaintiff's
claims, Defendants' failed to raise this issue previously and
therefore have waived such affirmative defense, employment
discrimination claims do not require a notice of claim, and
there is no notice of claim requirement as to the individual
Defendants. The Court disagrees with Plaintiff on all points
except that Plaintiff was not required to serve a notice of
claim as to the individual Defendants.

First, "notice of claim requirements apply to
employment discrimination claims against a county by the express
terms of N.Y. County Law § 52 . . . ." Anderson v. City of
N.Y., No. 06-CV-5726, 2012 WL 6720694, at *5 (E.D.N.Y. Dec. 27,
2012) (emphasis omitted).

Second, "the failure to timely file a notice of claim
[is] fatal unless the action has been brought to vindicate a
public interest or leave to serve a late notice has been granted
by the court." Germain v. Cnty. of Suffolk, No. 07-CV-2523,
2009 WL 1514513, at *8 (E.D.N.Y. May 29, 2009) (internal
quotation marks and citation omitted); see also Longi v. Cnty.
of Suffolk, No. 02-CV-5821, 2008 WL 858997, at *8 (E.D.N.Y. Mar.

27, 2008) ("Notice of claim requirements are strictly construed, and a failure to comply with the requirements generally requires dismissal of the state law claims."). Here, "a private civil rights lawsuit[] has not been brought in the public interest," Humphrey v. Cnty. of Nassau, No. 06-CV-3682, 2009 WL 875534, at *20 (E.D.N.Y. Mar. 30, 2009), nor can the Court extend the time to serve a late notice at this juncture, see Longi, 2008 WL 858997, at *8. Furthermore, knowledge of the action or claims is insufficient to satisfy this requirement. See Humphrey, 2009 WL 875534, at *20; Olsen v. Cnty. of Nassau, No. 05-CV-3623, 2008 WL 4838705, at *2 (E.D.N.Y. Nov. 4, 2008). Accordingly, Defendants' motion for summary judgment on Plaintiff's state law claims against the County and the Department for Plaintiff's failure to serve a notice of claim is GRANTED.

With respect to the individual Defendants, however, "the requirements of Sections 50-e and 50-i are not conditions precedent to the commencement of an action against a county official or employee 'unless the county is required to indemnify such person.'" Poux v. Cnty. of Suffolk, No. 09-CV-3081, 2010 WL 1849279, at *13 (E.D.N.Y. May 4, 2010) (quoting Grasso v. Schenectady Cnty. Pub. Library, 30 A.D.3d 814, 817, 817 N.Y.S.2d 186 (3d Dep't 2006)). "The County's duty to indemnify these employees turns on whether they were acting within the scope of their employment . . . ." Olsen, 2008 WL 4838705, at *4

(internal quotation marks and citation omitted). Employees are not acting within the scope of their employment where they have some personal involvement in the commission of intentional torts. See Knox v. Cnty. of Ulster, No. 11-CV-0112, 2013 WL 286282, at *9 (N.D.N.Y. Jan. 24, 2013) ("Where, according to a plaintiff's complaint, the defendant county employees were acting outside the scope of their employment, i.e., by the commission of intentional torts, the filing of a notice of claim is unnecessary."). Here, Plaintiff has alleged personal involvement in intentional torts by the individual Defendants, and thus he was not required to file a notice of claim as to them. Accordingly, Defendants' motion for summary judgment on Plaintiff's state law claim against the individual Defendants for failure to serve a notice of claim is DENIED.

    B.   Plaintiff's Claims under New York Executive Law
         § 296

         Defendants also assert that at least some of Plaintiff's claims brought pursuant to New York Executive Law § 296, or New York State Human Rights Law (the "NYSHRL"), are time-barred. More specifically, Defendants assert that, because Plaintiff filed his EEOC Complaint on August 28, 2009, that any claims brought before August 28, 2008 are time-barred. (Defs.' S.J. Br. at 21.) As the Court has made clear, however, the actionable events involve issuance of the NOPA and denials of

Plaintiff's time-off requests, which occurred after August 28, 2008. Accordingly, Defendants' motion for summary judgment on Plaintiff's NYSHRL claims because they are time-barred is DENIED.

In addition, Defendants maintain that Plaintiff's claims under the NYSHRL fail for the same reasons that Plaintiff's Title VII claims. See Maher v. Alliance Mortg. Banking Corp., 650 F. Supp. 2d 249, 259 (E.D.N.Y. 2009) ("Discrimination and retaliation claims brought under the NYSHRL are evaluated identically to claims brought under Title VII."). However, for the reasons expressed above, the Court has not fully granted Defendants' motion for summary judgment on Plaintiff's Title VII and retaliation claims, and to the extent that those claims survive, Plaintiff's NYSHRL claims survive as well and Defendants' motion for summary judgment in that regard is DENIED.

Moreover, Defendants also move for summary judgment insofar as Plaintiff raises a hostile work environment claim under the NYSHRL. "In order to establish a hostile work environment claim, a plaintiff must produce evidence that 'the workplace is permeated with discriminatory intimidation, ridicule, and insult, that is sufficiently severe or pervasive to alter the conditions of the victim's employment and create an abusive working environment.'" Ugactz v. United Parcel Serv.,

41

Inc., No. 10-CV-1247, 2013 WL 1232355, at *17 (E.D.N.Y. Mar. 26, 2013) (quoting Rivera v. Rochester Genesee Reg'l Transp. Auth., 702 F.3d 685, 693 (2d Cir. 2012)).  This involves a subjective, as well as objective, analysis.  See id.  "Relevant factors include the frequency of the discriminatory conduct; its severity; whether it is physically threatening or humiliating, or a mere offensive utterance; and whether it unreasonably interferes with an employee's work performance."  Maher, 650 F. Supp. 2d at 263-64 (internal quotation marks and citation omitted).

Here, looking at the totality of the circumstances and the evidence presented, the Court finds that Plaintiff has not set forth sufficient evidence to establish a hostile work environment claim.  While Plaintiff has presented evidence regarding the somewhat lengthy period of time over which the events occurred, periodic or episodic events are not sufficient. Ugactz, 2013 WL 1232355, at *17 ("Periodic and episodic incidents are not sufficient to establish hostile environment claims.").  Additionally, Plaintiff has not alleged or established the types of conduct sufficient to make out a hostile work environment claim.  See Kemp v. A & J Produce Corp., 164 F. App'x 12, 14-15 (2d Cir. 2005) (contrasting facts of case at issue with others in which courts have found sufficiently severe instances of discrimination for hostile work

environment claim); <u>Ugactz</u>, 2013 WL 1232355, at *18 (comments and incidents over the course of a few years were not sufficient pervasive or severe); <u>contra</u> <u>Maher</u>, 650 F. Supp. 2d at 264 (finding the plaintiff's claims that "she was subjected to a steady stream of unwelcome, escalating sexual harassment that included physical assault and continuous sexual intimidation" to be sufficient (internal quotation marks and citation omitted)). Accordingly, Defendants' motion for summary judgment on Plaintiff's hostile work environment claim is GRANTED.

   C.   <u>Plaintiff's Intentional Infliction of Emotional Distress Claim</u>

        Finally, Defendants also move for summary judgment on Plaintiff's state law claim for intentional infliction of emotional distress because, <u>inter</u> <u>alia</u>, Plaintiff has not established sufficiently severe or outrageous conduct. (Defs.' S.J. Br. at 23-24.) The Court agrees.

        "In order to assert a valid claim for intentional infliction of emotional distress under New York law, a plaintiff must demonstrate (1) extreme and outrageous conduct, (2) intent to cause severe emotional distress, (3) a causal connection between the conduct and the injury, and (4) severe emotional distress." <u>Zhengfang Liang v. Café Spice SB, Inc.</u>, 911 F. Supp. 2d 184, 213 (E.D.N.Y. 2012) (internal quotation marks and citation omitted). "[T]he alleged conduct must be so outrageous

43

in character, and so extreme in degree, as to go beyond all possible bounds of decency, and to be regarded as atrocious, and utterly intolerable in a civilized community." Wang v. Educ. Comm'n of Foreign Med. Graduates, No. 05-CV-1862, 2009 WL 3083527, at *6 (E.D.N.Y. Sept. 17, 2009) (internal quotation marks and citation omitted).

Here, a reasonable jury could not conclude that Plaintiff's claims regarding discrimination and retaliation satisfy the high threshold of extreme and outrageous conduct by Defendants. See Zhengfang Liang, 911 F. Supp. 2d at 213-14 (plaintiff's claims regarding retaliatory conduct did not sufficiently assert a claim for intentional infliction of emotional distress); Smalls, 396 F. Supp. 2d at 375 (discussing high threshold). Nor has Plaintiff set forth any evidence regarding "severe emotional distress." Id. (finding that the plaintiff's assertion that he cried once was not severe (emphasis in original)). Accordingly, Defendants' motion for summary judgment on Plaintiff's claim for intentional infliction of emotional distress is GRANTED.

CONCLUSION

For the foregoing reasons, Defendants' motion for summary judgment is GRANTED IN PART and DENIED IN PART. Defendants' motion is GRANTED with regard to: (1) Plaintiff's negligence claim; (2) Plaintiff's Title VII discrimination and

44

retaliation claims based upon time-barred events; (3) Plaintiff's Title VII discrimination claims based on Plaintiff's requests for time off, requests for use of the inmate chapels, and failure to promote because such events are not adverse employment actions sufficient to support a discrimination claim; (4) Plaintiff's Title VII claim for racial discrimination; (5) Plaintiff's Title VII retaliation claim based upon denial of inmate chapels and actions with respect to the EAP Unit, as these are not adverse employment actions sufficient to support a retaliation claim; (6) Plaintiff's state law claims against the County and the Department for Plaintiff's failure to timely serve a notice of claim; (7) Plaintiff's hostile work environment claim under the NYSHRL; and (8) Plaintiff's state law claim for intentional infliction of emotional distress. Defendants' motion is otherwise DENIED.

In accordance with this Court's Order dated May 29, 2012 (Docket Entry 62), the parties shall file a Joint Pre-Trial Order within twenty-one (21) days of the date of this Memorandum and Order.  This matter is hereby REFERRED to Magistrate Judge A. Kathleen Tomlinson to resolve any remaining pretrial issues and to determine whether this action is ready for trial.

SO ORDERED

Dated: September __10__, 2013
       Central Islip, New York

/s/ JOANNA SEYBERT_____
Joanna Seybert, U.S.D.J.

45