UNITED STATES DISTRICT COURT
EASTERN DISTRICT OF NEW YORK
-------------------------------------------------------------X
JONATHAN P. WHARTON,

                      Plaintiff,　　　　　**REPORT AND RECOMMENDATION AND ORDER**

    -against-　　　　　CV 10-0265 (JS)(AYS)

COUNTY OF NASSAU, et al.,

                      Defendants.
-------------------------------------------------------------X

**SHIELDS, Magistrate Judge:**

      This employment discrimination case was commenced in 2010 pursuant to 42 U.S.C. § 1983, Title VII of the Civil Rights Act of 1964, and parallel provisions of New York State law. See Docket Entry herein ("DE") 1. After a jury trial was concluded, the parties agreed to settlement in lieu of any appeal. They thereafter executed a settlement agreement.

      Presently before this Court, for Report and Recommendation is the motion of Defendant County of Nassau ("Defendant" or the "County") to hold Plaintiff's counsel in contempt for failing to comply with the terms of a confidentiality clause contained in their settlement agreement, see DE 149, which is more fully briefed in DE 157[1], 158 and 159. Also before this Court is the non-dispositive motion to seal with respect to certain documents. DE 161.

      For the reasons set forth below, it is respectfully recommended that the motion for contempt be denied. Further, it is ordered that the motion to seal documents on this Court's docket be denied, and that all documents filed herein be unsealed.

---

[1] The Court notes that Defendant's motion found at DE 149 is labeled "First Motion for Contempt" while Plaintiff's filing at DE 157 is labeled "Motion to Compel." Regardless of what the later filings are labeled, they are continued filings regarding the Defendant's motion for contempt.

BACKGROUND

I.    Procedural Background

    A.    Complaint, Amended Complaint, Summary Judgment and Trial

As noted, this case was commenced in 2010. At the same time that this matter was being litigated, Plaintiff had also commenced various employment-related administrative proceedings involving certain of the same Defendants named herein. Those proceedings have been referred to by the parties hereto as the "Other Proceedings".

An amended complaint was filed in November of 2011. DE 48. Extensive pre-trial proceedings thereafter took place, including the grant in part, and denial in part of a motion for summary judgment. See DE 79. The case was thereafter tried before a jury which rendered its verdict on September 17, 2014. DE 124. Although the jury rejected Plaintiff's claim that Defendants discriminated against him under either federal or state law, it found in favor of Plaintiff as to his claim of retaliation. See DE 125; Court Exhibit 5 (Amended Verdict Sheet). The jury awarded Plaintiff $375,000 as damages for pain and suffering. Id. The jury also found that Plaintiff was entitled to awards of punitive damages against the individual defendants in the total amount of $45,000. Thus, after trial Plaintiff was awarded $420,000 in total damages. This fact is reflected in the publicly available verdict sheet appearing as Court Exhibit 5 to DE 125.

    B.    Post-Trial Motions

On July 30, 2015, the District Court ruled on Defendants' post-trial motions as follows. The Court granted the motion for judgment as a matter of law with respect to one of the individual defendants, vacating the $15,000 punitive damage award as to that person. The Court further stated that the motion for a new trial as to compensatory damages would be granted unless Plaintiff agreed to a remitter reducing the compensatory damage award from $375,000 to

$60,000; thereby reducing the jury award from $420,000 to a total of $90,000. DE 134. Like the amounts referred to above, these numbers appear on the publicly available docket. Id. The District Court gave Plaintiff thirty days in which to decide whether to accept the remitter. Id. In a letter dated August 31, 2015, Plaintiff declined to accept the remitter, electing instead to proceed to re-trial on the issue of damages. DE 135. A new jury trial was scheduled to begin on February 16, 2016.

    C.    Settlement

After the new trial was scheduled, the parties pursued the option of settlement. A settlement conference was held before this Court on February 1, 2016. See DE 142. The settlement conference began in open court proceedings, and thereafter moved to consensual ex parte meetings with the parties and their counsel. The only portions of the settlement conference that were placed on the record were the opening remarks of the Court (including on-the-record discussions with counsel), and closing remarks. During closing remarks, this Court placed on the record the fact that this matter, along with the all other employment related disputes raised by Plaintiff, and any claim for attorneys' fees, were settled for total amount of $455,000. The three important aspects of the parties' settlement, which they put on the record, and which formed the basis for their agreement to settle were:

- the case was to be settled for $455,000;
- the $455,000 was an amount that was inclusive and compromised any claim for attorneys' fees;
- Plaintiff agreed to retire from the employ of the Defendant, and the settlement was to be a global settlement of any employment-related matters that had been raised by the Plaintiff prior to the settlement.

At the conclusion of the conference, and to make clear that the Court considered the matter settled to the satisfaction of counsel and their clients, this Court stated on the record the important terms referred to above, i.e., the settlement amount (which included fees), the retirement of the Plaintiff, and the global nature of the agreement.

The parts of the settlement conference that were held in open court, were, as noted above, on the record. Although there was no court reporter present, the proceedings were held in an open courtroom and were electronically recorded. Any individual or entity with access to this Court's electronic docket could see that a settlement conference was held. Further, any such individual or entity had (and continues to have) the ability to request that a transcript of the open court proceedings be transcribed. See DE 142. No party asked that the parts of the settlement conference that were held in open court be sealed, or that the record of proceeding be sealed. Thus, on the date of the settlement conference, when a settlement in principle and the important terms thereof were put on the record, no discussions were held as to the parties' intentions with respect to confidentiality.

   C.  <u>Post-Settlement Conference and the June 22, 2016 Agreement</u>

On March 22, 2016, seven weeks after the settlement conference before this Court, the District Court noted that the case was settled on February 1, 2016, but that no stipulation of discontinuance had yet been submitted. That Court therefore entered an order directing the Clerk of the Court to close the case without prejudice to reopening if the settlement was not consummated. DE 143.

On April 6, 2016, counsel for Plaintiff wrote to this Court acknowledging that a settlement in principle was reached, but advising that difficulties had arisen preventing the parties from finalizing their agreement. DE 144. A telephone conference was held, and thereafter

a global settlement agreement (the "Agreement") was finally drafted and executed by the parties and their counsel. As discussed in greater detail below, the Agreement was reached and executed on June 22, 2016 (the "Settlement Agreement" or the "Agreement"). See DE 145. The Agreement reflects the parties' agreement to compromise all claims for a total settlement payment of $455,000 ($255,000 of which was agreed to be paid to Plaintiff's counsel as his fee).

In a letter dated July 13, 2016, Plaintiff's counsel informed this Court that the Agreement was fully executed and submitted to the Nassau County Legislature for approval. DE 145. Counsel further represented to the Court that once legislative approval was secured, the parties would file a stipulation of discontinuance. Id.

D.   Post-Agreement Dispute

On December 2, 2016, Plaintiff's counsel wrote to this Court requesting an emergency telephone conference. DE 146. The letter stated that the parties had agreed to the terms of their settlement, and that their agreement was approved by the County legislature. Plaintiff's correspondence requesting a telephone conference described a dispute that had arisen between the parties regarding compliance with a term of the Agreement that was expressed before this Court, i.e., Plaintiff's retirement for his position with the County. In particular, counsel disagreed as to whether Plaintiff was entitled to payment of the agreed upon settlement amount upon filing papers in support of his agreed upon retirement, or whether payment was to be delayed until Plaintiff's last day of work at the County facility where he was employed. Two days later, in response to the letter, this Court held a telephone conference, and also allowed Defendants time in which to submit a letter detailing their positions. While the Agreement was not annexed to either parties' correspondence, both quoted the exact language of the term referring to Plaintiff's

retirement -- a term forming the basis of the settlement that was agreed upon during the settlement conference before this Court.

In an order dated December 6, 2019, this Court interpreted the language of the parties' agreement in context of what was decided when they were before this Court, and held that the agreement provided for full payment of the settlement amount upon Plaintiff's submission of his retirement papers. Accordingly, this Court held that having made the required submission, Plaintiff was entitled to payment. DE 148. Once that payment was made, the settlement reached before this Court would be finally consummated. While the Court further held that, upon payment of the settlement amount, Plaintiff would be required to file a final stipulation of discontinuance, none was ever filed. While the settlement has been consummated and this case remains closed pursuant to the order of the District Court, no party has filed a stipulation of discontinuance.

E.   The Present Motion for Contempt

On January 2, 2019, after consummation of the settlement terms agreed to before this Court, the County filed the presently pending motion for contempt against Plaintiff's counsel. DE 149. On April 9, 2019, that motion was referred to this Court for Report and Recommendation as to whether the motion should be granted, and if necessary, to determine any appropriate relief. See Electronic Order dated April 9, 2019. The contempt motion is addressed to an alleged violation of the Agreement's terms of confidentiality, which are described and quoted extensively in the documents filed on the docket herein, including docket items that were never the subject of any request to seal.

This Court directed counsel to appear on May 8, 2019, for oral argument on the referred motion. During that argument counsel for Defendants did not dispute that the amounts referred to

above were a matter of public record. She argued, however, that the confidentiality clause sought to be enforced was addressed to the behavior of Plaintiff's counsel - Frederick Brewington, Esq. Counsel stated that by entering into the confidentiality clause at issue, the County sought to avoid Mr. Brewington's "capitalizing on the jury verdict . . . and using it in other litigation . . . and to solicit clients against Nassau County". Transcript of 5/08/2019 Proceedings ("Tr.") 6:5-14, DE [153]. While she did not - and obviously could not - seek to cleanse any information from the public record, counsel sought an order compelling attorney Brewington to remove from his professional website (where he posts various verdicts obtained by his firm) any information referring to the jury verdict herein.

Counsel also stated that she sought to prohibit Mr. Brewington from "making public disclosures in other cases regarding the findings" in this case. Tr. 8:22-23. As an example, counsel referred to Mr. Brewington's opposition to a motion for summary judgment in a different case pending against the County, and sought to prohibit him from making any reference to matters of record in this case. The Court inquired of Defense counsel as to whether she was similarly prohibited from making comments in other cases, including pointing out that her client disagreed with the jury verdict in this case and that instead of incurring the costs and uncertainty of appeal, this case was settled. She stated her belief that the Agreement prohibited any such comment. Tr. 13:10.

In response to the County's position, attorney Brewington stated that information about the jury verdict in this matter has been published on his law firm's website since 2014, and that during discussions as to the terms of the Agreement, the County never asked that any such information be removed from that website. When asked what obligations he thought he was agreeing to when he signed the Agreement - individually and as counsel for Plaintiff - Mr.

Brewington stated his belief that he was bound only not to make disparaging, inappropriate or untrue comments, not to disclose the terms of the Agreement, and to ensure that his client did not speak about the case in disparaging terms.[2] Tr. 11:16-12:15. Mr. Brewington also stated that the Agreement bound him from the time of the Agreement forward, but could not operate to negate anything that had already taken place. Tr. 14:14-22. He also argued that the Agreement did not prohibit him from referring to this case in documents submitted in other lawsuits, particularly with respect to the jury's finding of municipal liability. Tr. 15:7-16.

As to Defense counsel's argument that the County intended the Agreement to prohibit Plaintiff's counsel from "soliciting" other clients, Mr. Brewington expressed outrage at being targeted for a possible violation of his First Amendment rights, and his obligation to zealously represent other clients. Tr. 18:1-13.

During argument this Court raised with counsel serious concerns about jurisdiction, the confidentiality sought to be imposed, and the relief sought by the County. This Court therefore entered an order directing further briefing. In particular, counsel were directed to address the issues of whether the agreement sought to be enforced violates the First Amendment to the Constitution (including whether there was a waiver of any such right) and whether the agreement, as sought to be enforced by Defendants, violates an attorney's duty to zealously protect the rights of other clients and/or the public policy of the State of New York and/or the United States. Electronic Order dated May 8, 2019. The entire transcript of the argument held before this Court is available on the public docket herein under docket entry 153. The parties have now fully briefed their positions as to the matters raised by the Court, and in connection

---

[2] Plaintiff's counsel noted also that Defense counsel had breached that portion of the agreement by making it an exhibit to the presently pending motion for a period exceeding 24 hours. In view of the decision herein that posting is of no moment.

with Defendant's motion for contempt. With the case background described above and the parties' positions before the Court, the Court turns to the merits of the motion.

## ANALYSIS

I.   The Agreement

The settlement agreement (hereinafter the "Settlement Agreement" or the "Agreement") was executed by the parties and their counsel. Thus, on the Plaintiff's side, the Agreement was signed by both Jonathan Wharton and his lawyer, Frederick Brewington, Esq. On the defense side, the Agreement was executed by an assistant Nassau County Attorney as well as private counsel for Defendants. The Agreement reflects the parties' agreement to compromise all claims for a total settlement payment of $455,000 ($255,000 of which was agreed to be paid to Plaintiff's counsel as his fee)

The Agreement contains a confidentiality clause as follows:

> The parties and their respective counsel agree to keep this Agreement strictly confidential and not to disclose the terms of the settlement, including but not limited to, the amount paid under the Terms of the Agreement, except in connection with any steps taken to effectuate compliance with or enforcement of this Agreement . . . Furthermore, no Party (or its, his, her or their counsel) will make any statement or disclosure, public or otherwise, that any other Party or Parties were found liable or found to have acted wrongfully in connection with the events that are the subject of this Action or Other proceedings. The Parties and their respective counsel will limit any statements or remarks to the following: 'The Plaintiffs and the Defendants have resolved this matter to their satisfaction.' This provision shall take effect as of the execution of the Agreement and shall survive.

DE 149 Exhibit A.

II.   Jurisdiction

   A.   Legal Principles

Federal courts are courts of limited jurisdiction. Kokkonen v. Guardian Life Ins. Co., 511 U.S. 375, 377 (1994). Therefore, District Courts do not automatically retain jurisdiction over

enforcement of settlement agreements reached in federal cases. Sanchez v. Charity Rest. Corp., 2019 WL 4187356, *1 (S.D.N.Y. September 4, 2019), quoting, In re Am. Express Fin. Advisors Sec. Litig., 672 F.3d 113, 134 (2d Cir. 2011); see Trs. of United Union of Roofers, Waterproofers & Allied Workers Local 154 Welfare, Pension, Annuity, & Apprenticeship & Training Funds v. DME Constr. Assocs., 2017 WL 9485724 at *5 (E.D.N.Y. Feb. 27, 2017) (Report & Recommendation), adopted at, 2017 WL 1134728 (E.D.N.Y. Mar. 27, 2017). Instead, a motion seeking to enforce a settlement agreement requires its "own basis for jurisdiction," id. at 378, Hendrickson v. United States, 791 F.3d 354, 358 (2d Cir. 2015). In the absence of an otherwise independent basis of federal jurisdiction (such as diversity of citizenship), jurisdiction over enforcement of a settlement agreement requires the dismissing court to "either (1) expressly retain jurisdiction over the settlement agreement, or (2) incorporate the terms of the settlement agreement in its order". Hendrickson v. United States, 791 F.3d at 358.

Jurisdiction over enforcement of settlement agreements is not created by merely dismissing a case "without prejudice", "so-ordering" a general stipulation of dismissal, or allowing parties to re-open a closed case if their agreement is not consummated. Trs. of United Union of Roofers, 2017 WL 9485724 at *5. Even approval of a settlement agreement as fair and reasonable under law does not create an independent basis for the exercise of jurisdiction. Sanchez, 2019 WL 4187356, *1 (no jurisdiction to enforce terms of approved settlement under the Fair Labor Standards Act); see Hendrickson v. United States, 791 F.3d at 359 (rejecting theory that court's general judicial "imprimatur" to a settlement creates federal jurisdiction). Nor is jurisdiction created by the parties' expressed or unexpressed intent that they be able to return to Federal Court to enforce the terms of their written agreement. Cross Media Mktg Corp. v. Budget Mktg. Inc., 319 F. Supp. 2d 482, 483 (S.D.N.Y. 2004).

B.     There is No Federal Jurisdiction To Enforce the Settlement Agreement

Applying the principles set forth above, this Court has no doubt that the District Court lacks jurisdiction over the present motion. First, that Court did not expressly retain jurisdiction over the Settlement Agreement. No document on the record in this matter contains any such term. Additionally, if the parties had thought to ask this Court to exercise such jurisdiction, absent their full consent to Magistrate Judge jurisdiction for all purposes, this Court would likely lack the ability to exercise any such power.

Nor did the District Court "incorporate the terms" of the agreement in any order closing the case. See DE 143. Instead, upon being advised that a settlement in principle was reached, that Court merely closed the case with leave to re-open if the agreed upon settlement was not consummated. Id. Where, as here, the settlement was agreed to by a municipality such as the County, ultimate consummation of the agreement necessarily envisioned putting terms in writing, execution of a formal written agreement, approval by the County legislature and payment. A generic order of dismissal (such as the one here), cannot provide the basis for jurisdiction with respect to particular terms of the Agreement which was drafted, finalized and approved by the County Legislature after the open court agreement to settle and dismissal. Thus, while the dismissal order might have allowed the parties to proceed to trial if no settlement was consummated (if, for example, the County legislature declined to approve the amount), it cannot provide a basis for exercising jurisdiction over a motion for contempt of the Agreement. This is especially true in light of the fact that the County is seeking to have this Court enforce a term that was negotiated after the settlement conference, and allegedly breached after full payment was made, i.e., after the settlement was fully consummated. Indeed, neither this Court nor the District Judge ever saw the confidentiality provision sought to be enforced. While this Court

oversaw the settlement discussions, and was made aware of the important terms set forth above, it was not provided with a copy of the Agreement until it was filed in connection with the present motion for contempt.

While the County acknowledges the general legal principles referred to above, it argues, in principal, that the parties intended for the Court to exercise jurisdiction over the Agreement, and that this Court's prior exercise of jurisdiction over the parties' settlement dispute provides a basis for exercising Federal jurisdiction. First, as noted, the parties' intent as to continuing jurisdiction cannot form a basis to exercise Federal jurisdiction. As to the second contention, this Court presided over settlement negotiations that resulted in settlement of this case. It also put certain terms, essential to the parties' agreement, on the record. It is true that after that conference, and, indeed after the District Court's closing of the case subject to consummation, both parties approached this Court to resolve a dispute. That dispute arose from a precise term that was negotiated before this Court and set forth on the record, i.e., Plaintiff's retirement from his position with the County. It also took place before final payment was made. It is therefore this Court's view that this Court's order with respect to Plaintiff's retirement took place prior to the District Court's envisioned "consummation" of the settlement, and that there was therefore jurisdiction to resolve the matter. That the parties' dispute arose directly from a term of which this Court was made aware further distinguishes the Court's adjudication of that matter from this motion for contempt of a confidentiality provision. Additionally, even if this Court was in error when it agreed to continue to engage in settlement issues after the signing of the Agreement, any such error would be compounded by continuing to exercise federal jurisdiction where there is none.

For the foregoing reasons, this Court respectfully recommends that there is no jurisdiction to enforce the terms of the parties' settlement agreement, and that the motion for contempt be denied.

III.    Motion to Seal Items on the Docket

As a final matter, this Court addresses the facts that the motion for contempt has been docketed under seal, DE 149, and that there is a pending motion to seal the entirety of the County's reply papers in further support of their motion, DE 158. For the reasons set forth below, the Court orders the previously sealed motion to be unsealed, and denies the motion to seal in its entirety.

   A.    Legal Principles

The County seeks to have this Court seal documents that appear on the public docket. The Second Circuit has made clear that there is both a common law and First Amendment presumption of a public right of access to such documents. That presumption arises from the public's need to hold Courts accountable, and for the public to have "confidence in the administration of justice". United States v. Amodeo, 71 F.3d 1044, 1048 (2d Cir. 1995). In particular, it has been made clear that there is a qualified right of public access to documents filed in connection with summary judgment motion practice. Lugosch v. Pyramid Co., of Onondaga, 435 F.3d 110, 122 (2d Cir. 2006). This rule includes all documents submitted in connection with a motion, and not only those deemed somehow important to the Court's decision. Lugosch, 435 F.3d at 119. The reason such documents are protected is because summary judgment is an adjudication, and "[a]n adjudication is a formal act of government, the basis of which should, absent exceptional circumstances, be subject to public scrutiny". Lugosch, 435 F.3d at 124, quoting, Joy v. North, 692 F.2d 880, 893 (2d Cir. 1982).  More particularly,

those documents fall into the category of "judicial" documents, i.e., documents that are "relevant to the performance of the judicial function and useful in the judicial process". United States v. Erie County, New York, 763 F.3d 235, 240 (2d Cir. 2014), quoting Lugosch, 435 F.3d at 119. Documents categorized as "judicial" include not only summary judgment motion papers, but also any other document that is relevant to the judicial process. Bernstein v. Bernstein Litowitz Berger & Grossmann, L.P., 2016 WL 1071107, at *5 (S.D.N.Y. January 12, 2015). Such documents include compliance reports filed pursuant to settlement decrees and items accessible on the Court's docket. Id. at *5-6.

The common law and First Amendment rights of access to judicial documents are not absolute. Rather, such "documents may be kept under seal if 'countervailing factors' in the common law framework or 'higher values' in the First Amendment framework so demand. Lugosch, 435 F.3d at 124. In the latter context, documents may be sealed only if supported by "specific, on-the-record findings that sealing is necessary to preserve higher values and only if the sealing order is narrowly tailored to achieve that aim". Lugosch, 435 F.3d at 124, quoting, In re New York Times Co., 828 F.2d at 116. Importantly, judicial documents may "not remain under seal *absent the most compelling reasons*". Id. (emphasis in original).

   B. <u>The Motion to Seal is Denied and the Entire Docket Is Ordered Unsealed</u>

All of the documents sought to be sealed were submitted in connection with Defendants' motion for contempt. Accordingly, they were submitted for this Court to consider in connection with the performance of its judicial decision-making function. As such, they fit squarely within the category of judicial documents as to which the rights of access referred to above apply. Given the nature of the documents, the Court turns to consider whether there are any reasons - compelling or otherwise - to seal the documents. There are not.

The only argument offered in favor of sealing all of the documents in docket entries 149 and 161 is that the papers include the confidentiality agreement sought to be enforced. This is not a compelling reason for several reasons. Importantly, any decision allowing the sealing of the documents herein would be tantamount to this Court's agreeing to enforce the confidentiality stipulation in the manner desired by the motion. As noted, Defendant sought, through this motion, to keep Plaintiff's attorney from referring to matters that are already completely public - including, most importantly, information on this Court's public docket. Thus, counsel seeks to make private information contained within judicial documents (including the amount of jury verdict) that could not be more public and apart of the Court's judicial function. Even if this Court were inclined to grant the motion to seal, which it is not, it could not turn back the clock and make private that which is already public. See Gambale v. Deutsche Bank, A.G., 377 F.3d 133, 144, 144 n.10 (2d Cir. 2004) ("once the cat is out of the bag, the ball game is over"), quoting, Calabrian Co. v. Bangkok Bank, Ltd., 55 F.R.D. 82 (S.D.N.Y. 1972).

It is difficult to image a set of circumstances where a Court would agree to be a party to counsel's desire to keep quiet what has been announced by a jury in open court. Even worse, Defendant seeks to prohibit Defense counsel from even referring to those public matters in *other* lawsuits. Thus, instead of simply arguing in other cases that the jury verdict herein was wrong, the County takes the awkward position that neither side should be able to refer to the jury's findings herein in connection with a summary judgment motion in a different civil rights case. What counsel seeks to hold private is information already available in the record of this case - information that is available to everyone - including any lawyer who might want to represent

another plaintiff.[3]  Suffice it to say that there is absolutely no reason for this Court to be a party to counsels' confidentiality agreement by a sealing of the public docket herein.

In sum, the documents sought to be sealed are judicial documents as to which there are public rights of access. Defendant offers no justification for overcoming the presumption of such access. The motion to seal is denied, and the Clerk of the Court is directed to unseal all parts of the docket in this case.

## CONCLUSION

For the foregoing reasons this Court respectfully recommends that the motion appearing as Docket Entry Number 149 in this case be denied. The Court also orders that the non-dispositive motion appearing as Docket Entry Number 161 be denied and that the docket herein be completely unsealed.

## OBJECTIONS

A copy of this Report and Recommendation is being provided to all counsel via ECF.  Any written objections to this Report and Recommendation must be filed with the Clerk of the Court within fourteen (14) days of filing of this report.  28 U.S.C. § 636(b)(1); Fed. R. Civ. P. 6(a), 72(b).  Any requests for an extension of time for filing objections must be directed to the District Judge assigned to this action prior to the expiration of the fourteen (14) day period for filing objections.  Failure to file objections within fourteen (14) days will preclude further review of this report and recommendation either by the District Court or Court of Appeals. Thomas v. Arn,

---

[3] The Court is also, to say the least, confused as to what Plaintiff's counsel thought that he was agreeing to when he entered into the confidentiality agreement in this case. While counsel argues against construing the confidentiality clause as desired by Defendant, it is unclear what manner of confidentiality he thought he was agreeing to when signing the agreement. In any event, for the reasons above, the Court need not construe the confidentiality clause, as there is no jurisdiction to do so.

474 U.S. 140, 145 (1985) ("[A] party shall file objections with the district court or else waive right to appeal."); Caidor v. Onondaga Cnty., 517 F.3d 601, 604 (2d Cir. 2008) ("[F]ailure to object timely to a magistrate's report operates as a waiver of any further judicial review of the magistrate's decision").

So Ordered

Dated: Central Islip, New York
October 24, 2019

/s/ Anne Y. Shields
Anne Y. Shields
United States Magistrate Judge